W. R. Zanes & Co. *v.* United States [1]

[1] C. D. 55.

United States Customs Court, Third Division

 (

(Decided November 3, 1938)

*W. R. Zanes (Carl G. Stearns* of counsel) for the plaintiffs.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: In this suit against the United States the plaintiffs claim that an allowance in duties should be made, under the provisions of section 506 of the Tariff Act of 1930, for a portion of a shipment of tomatoes which was abandoned to the Government within 30 days after entry. The collector of customs at the port of Galveston refused to make allowance for the abandoned merchandise in the liquidation of the entry.

Prior to the hearing the protest was amended by adding the claim that allowance for the damaged tomatoes should be made under article 818 of the Customs Regulations of 1930 as amended in T. D. 48506.

The merchandise was entered at the port of Houston, Tex., and the case was called for trial at that port. Three witnesses testified in behalf of the plaintiffs, namely, the deputy collector at that port, the customs examiner, and a member of the importing firm.

The deputy collector testified that he received an application from the importer to abandon a portion of the shipment here involved on April 27, 1937. This application was received in evidence and marked "Exhibit 1." The entry papers are dated April 24, 1937. The witness testified further that the application for abandonment was approved by him and submitted to the examiner "for identification and check-up for damaged merchandise"; that the examiner made a report and noted in red ink on the invoice damage for the amount of 9,636 pounds of tomatoes; that he gave the importer no directions as to where to deliver the damaged merchandise because it could be properly and conveniently handled and segregated for examination at the importer's place of business and would not have to be moved to some other place for examination, and that he was satisfied to have the tomatoes disposed of upon the importer's premises.

The examiner testified that the deputy collector instructed him to make an examination and report on the condition of the merchandise; that he made a general examination of the shipment on April 26, 1937, which was two days after entry, and each day while the damaged tomatoes were being segregated he watched the work for an hour or so in the morning, and about 3:30 in the afternoon he returned and

watched for half an hour and then weighed the damaged merchandise which had been segregated; that the damaged tomatoes were over ripe and rotten and unfit for human consumption; that he weighed 9,636 pounds of unmerchantable tomatoes; that he was informed that the damaged ones were put outside each night to await the garbage man and they were not on the premises when he arrived the next day; that four or five days were consumed in the segregation, and that there were no other tomatoes on the premises at that time.

A member of the importing firm testified that the tomatoes from the instant shipment were segregated and repacked in the warehouse of the importing firm; that the rotten ones were put in one place and the sound ones repacked and placed in boxes; that the rotten tomatoes were weighed by the examiner and were not merchantable and were thrown away, being placed in the trash barrels with rotten celery and potatoes, and put outside every night and taken away by persons who pick up slops to feed hogs; that he received no money for the damaged tomatoes; that the store was swept out every night and everything thrown in the trash cans which were taken outside and emptied during the night.

The collector gives the following reasons in his report for his refusal to make allowance for the abandoned tomatoes:

Application does not state method of destruction as required by Art. 810 (a) CR 1931.

No evidence with entry papers how abandoned tomatoes were to be disposed of and no certificate by customs officer that any part of entire quantity had been actually destroyed or removed from the control of the claimant as required by Art. 811 CR 1931, amended by T. D. 47283 and T. D. 48156. Examiner reports abandoned tomatoes left with importer.

Appraiser did not report abandoned tomatoes to be entirely without commercial value in the appraisement return as required by Art. 818 CR 1931, amended by T. D. 48506.

Regulations, therefore, not complied with and no allowance made in the liquidation of the entry.

Article 810 (a) of the Customs Regulations of 1931, referred to by the collector, relates to "Abandonment or destruction of merchandise in bond" and does not seem to apply to the merchandise here involved, because the entry in this case was made for consumption.

Article 811 of the Customs Regulations of 1931, also referred to in the collector's report, as amended in T. D. 47283 and T. D. 48156, reads as follows:

Sale of abandoned merchandise will be made in accordance with the provisions of chapter XVIII so far as applicable. No part of the proceeds shall be returned to the importer. After paying, first, the expenses of sale, and, second, carriers' liens for freight, charges, or contribution in general average, the net proceeds, if any, shall be deposited under "Miscellaneous Receipts from Customs." (T. D. 47283).

If the abandoned merchandise or any part thereof is entirely worthless, or if the expenses of sale probably would exceed the proceeds, the merchandise shall be destroyed or otherwise disposed of as the collector may direct, but no abandonment claim relating to such merchandise shall be certified by a customs officer who has not satisfied himself as to the quantity of the abandoned portion of the shipment and that the entire quantity of the goods covered by the collector's instructions as to disposition has been actually destroyed or removed from the control of the claimant so that there is no possibility of its being made the subject of another claim. (T. D. 48156.)

It is noted that the above regulation relates solely to the duties of the customs officers. It would be a miscarriage of justice to hold that this provision prohibited relief on the sole ground that the customs officers at Houston failed to make returns in sufficient detail to satisfy the conscience of the collector of customs at Galveston, although the importer had done everything required of him by the customs regulations. If the collector was not satisfied with the reports of his subordinates, he could have secured additional information.

The regulation, itself, seems to give the examining officers considerable discretion, and their certification of damage is entitled to great consideration even though not in great detail, for the regulation provides that no "abandonment claim relating to such merchandise shall be certified by a customs officer who has not satisfied himself as to the quantity of the abandoned portion of the shipment and that the entire quantity of the goods covered by the collector's instructions as to disposition has been actually destroyed or removed from the control of the claimant so that there is no possibility of its being made the subject of another claim." In the absence of evidence to the contrary, a Government official is presumed to have done his duty. Therefore, the report of the acting appraiser on the summary sheet attached to the invoice containing the words "Damage as noted," under the heading of the column noted as "Remarks," and the report of the examiner on the invoice in the words "9636 lbs. damaged tomatoes" indicates that those officers satisfied themselves as to the quantity of abandoned merchandise and the disposition thereof.

Article 818 of the Customs Regulations of 1931, as amended in T. D. 48506, to which the collector also refers, reads as follows:

Art. 818. *Articles damaged and worthless at the time of importation.*—When a shipment of merchandise, whether perishable or nonperishable, or any portion thereof which shall have been segregated from the remainder of the shipment under customs supervision at the expense of the importer, is found by the appraising officer to be entirely without commercial value by reason of damage or deterioration and is so reported to the collector in the appraisement return, an allowance in duties on such merchandise on the ground of nonimportation should be made in the liquidation of the entry.

Although the customs officers testified in this case that the 9,636 pounds of tomatoes had no commercial value, the failure of the

appraiser to make such return in his report does not bar the plaintiffs from relief under section 506. In the case of *J. Demartini & Co.* v. *United States*, T. D. 48836, the court held that an importer may apply for relief in the case of decayed merchandise under either section 506 (1) or 506 (2). In the case at bar, the plaintiffs filed a notice of abandonment of the damaged tomatoes under section 506 (1). The regulation applicable under that provision is article 809 of the Customs Regulations of 1931, reading, as amended in T. D. 45764, as follows:

ART. 809. *Abandonment under section 506 (1).*—(a) A written notice of abandonment must be filed with the collector of customs at the port where the consumption entry is filed within 30 days after the date of entry as defined in article 281 or, in the case of examination packages, within 30 days after release, whether or not delivery is taken by the importer immediately after entry or release as the case may be. All such notices shall be stamped with the date of receipt in the customhouse.

(b) The collector shall cause the abandoned merchandise to be examined and identified with that described in the invoice used in making the entry. Merchandise abandoned under section 506 (1) must be identified to the satisfaction of the collector; and when repacking is necessary to segregate it from the balance of the shipment, such repacking should be done at the expense of the importer under customs supervision.

There seems to be a division of authority of the customs officers in this case. The collector of customs is located at Galveston, Tex., but the merchandise was entered and the estimated duty was paid at the subport of Houston, in which port a deputy collector is in charge. Does article 809 (b) mean that the abandoned merchandise must be identified to the satisfaction of the deputy collector at Houston who received the entry, collected the estimated duties, received the notice of abandonment, and directed that the abandoned merchandise should be examined and weighed by the customs officers and segregated from the balance of the shipment, or does the section mean that the collector of customs at the port of Galveston should be satisfied? In section 401 (h) of the Tariff Act of 1930 the word "collector" is defined as follows:

*Collector.*—The word "collector" means collector of customs and includes assistant collector of customs, deputy collector of customs and any person authorized by law or by regulations of the Secretary of the Treasury to perform the duties of a collector of customs.

Article 1319 of the Customs Regulations of 1931 reads as follows:

ART. 1319. *Deputy collectors in charge.*—(a) Deputy collectors in charge of ports of entry shall, under the general supervision and direction of the collectors, receive entries of merchandise, collect duties, fees, and other moneys, enter and clear vessels, issue documents to vessels, and perform all other services prescribed by law, the regulations of the department, or the instructions of the collector.

244

It would seem that under the circumstances of this case the intent of article 809 (*a*) would be discharged if the surrounding conditions were sufficient to satisfy the deputy collector. The record in this case shows that the deputy collector was satisfied with the method of segregation and the disposition of the decayed tomatoes.

The provision in section 506 (1) is limited to cases where 5 per centum or more of the total value of all the merchandise in the same class entered in the invoice is abandoned. In the case now before the court the examiner found that 9,636 pounds of tomatoes were damaged and the weigher's report shows that the entire shipment consisted of 19,926 pounds. 9,636 pounds is more than 5 per centum of the entire shipment of tomatoes and we hold that an allowance for the damaged tomatoes, which are covered by the abandonment duly filed, should be made by the collector of customs under the provisions of section 506, as claimed in the protest. Judgment will be entered in favor of the plaintiffs.